

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00408-CV

**IN THE INTEREST OF J.D.M.**, a Child

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2017-PA02489
Honorable Charles E. Montemayor, Judge Presiding

Opinion by: Patricia O. Alvarez, Justice

Sitting: Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: September 20, 2023

AFFIRMED

In this parental rights termination case, the trial court terminated Mom's parental rights to her child, J.D.M.[1]

Mom challenges the legal and factual sufficiency of the evidence for the trial court's findings on the best interests of the child.

Because the evidence was legally and factually sufficient to support the trial court's findings under the elevated evidentiary standards, we affirm the trial court's order.

### BACKGROUND

In this case, Mom is the only appellant, and we limit our recitation of the facts to those relating to Mom and the child.

---

[1] We use aliases to protect the child's identity. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8.

In July 2022, J.D.M. was taken into care by the Department due to Mom's neglectful supervision and medical neglect. Mom admitted to using methamphetamines, amphetamines, opiates, and marijuana.

The Department created a service plan for Mom, which required her to complete a psychological evaluation, a psychosocial assessment with individual counseling, substance abuse classes, random drug testing, and parenting courses. The Department also referred Mom to outpatient drug treatment. Mom was expected to visit with J.D.M. and not to discuss the Department's case with him. She was also expected to maintain employment and appropriate housing.

Mom completed her psychosocial assessment and psychological evaluation, but she did not complete outpatient drug treatment or individual counseling. Her drug tests did not show progress. She struggled with visitation. Her caseworker was unable to determine whether Mom's housing was appropriate because Mom would not allow the caseworker inside. Mom also never provided the caseworker with proof of income, though she testified she had maintained the same job for three years.

After a bench trial on the merits, the trial court found by clear and convincing evidence that Mom's course of conduct met the grounds in Family Code subsections 161.001(b)(1)(N), (O), and (P), and that terminating Mom's parental rights was in the child's best interests. The trial court terminated Mom's parental rights to J.D.M., and it appointed the Department as managing conservator.

Mom appeals. She challenges the legal and factual sufficiency of the evidence on the best interests of the child. Before we address Mom's sole issue, we briefly recite the applicable evidentiary and appellate review standards.

**EVIDENCE REQUIRED, STANDARDS OF REVIEW**

"[I]n a bench trial, the judge as the trier of fact weighs the evidence, assesses the credibility of witnesses and resolves conflicts and inconsistencies." *In re S.J.R.-Z.*, 537 S.W.3d 677, 691 (Tex. App.—San Antonio 2017, pet. denied); *accord In re F.M.*, 536 S.W.3d 843, 844 (Tex. App.—San Antonio 2017, no pet.).

On review, an appellate court must not "substitute its own judgment for that of a reasonable factfinder." *In re Commitment of Stoddard*, 619 S.W.3d 665, 668 (Tex. 2020); *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). The evidentiary standard[i] the Department must meet and the statutory grounds[ii] the trial court must find to terminate a parent's rights to a child are well known, as are the legal[iii] and factual[iv] sufficiency standards of review. We apply those standards here.

**BEST INTERESTS OF THE CHILD**

In her only issue, Mom argues the evidence was legally and factually insufficient to support the trial court's finding that terminating her parental rights was in J.D.M.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

**A.     Unchallenged Statutory Grounds Findings**

A single statutory ground finding, when accompanied by a best interest of the child finding, is sufficient to support a parental rights termination order. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re R.S.-T.*, 522 S.W.3d 92, 111 (Tex. App.—San Antonio 2017, no pet.).

Here, the trial court found that Mom constructively abandoned J.D.M.; she failed to comply with her court-ordered service plan; and she used a controlled substance in a manner that endangered the health or safety of her child and (1) failed to complete a court-ordered substance abuse treatment program, or (2) after completion of a court-ordered substance abuse treatment

program, she continued to abuse a controlled substance. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O), (P).

Mom does not challenge any of those findings, and we need not address them. *See* TEX. R. APP. P. 38.1(f), (i); *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (requiring appellate courts to review grounds (D) and (E) "[w]hen a parent has presented the issue for appeal"). Instead, she challenges only the best interest findings.

## B. Best Interest of the Child Factors

The Family Code statutory factors[v] and the *Holley* factors[vi] for best interest of the child are well known. Applying each standard of review and the applicable statutory and common law factors, we examine the evidence pertaining to the best interests of the child.

The trial court heard the following testimony regarding the child's age and vulnerabilities, Mom's course of conduct, and the child's placements.

## C. Child's Ages and Vulnerabilities

At the time of trial, J.D.M. was nine years old, and he had significant medical needs. He was unable to care for himself, and the Department had placed him with a specialized foster home, where his special needs were being met.

J.D.M. was diagnosed with mosaic trisomy 8, fragile X syndrome, camptodactyly, and bilateral hydronephrosis. His physical condition requires numerous medical appointments with different specialists such as physical therapists, speech therapists, occupational therapists, a nephrologist, and an ENT specialist. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (factors (B), (C), (D)).

## D. Mom's History of Substance Abuse

The Department had been involved with J.D.M. and Mom since J.D.M. was two years old. Mom's primary issues were substance abuse and mental health struggles. The Department had

tried to work with Mom on her substance abuse challenges through family-based services before removing J.D.M. from her custody. After J.D.M. was removed, the Department referred Mom to outpatient drug treatment, but she was discharged due to poor attendance. The Department tried to refer Mom to treatment again, but she was discharged after the facility could not reach her. Mom showed proof of completing drug awareness classes, though they were not part of a program that the Department referred her to. Mom testified at trial that she remained drug-free in the three or four months before trial, and she argued that her urinalysis tests showed negative results. But Mom's caseworker testified that her follicle tests continued to show concerns and that Mom was not progressing toward sobriety. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (8), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)); *see also In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.) ("A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent."); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (same).

## E.      Mom's Visits with J.D.M.

At the time of trial, Mom had not visited J.D.M. for two months. Her caseworker testified that Mom visited with J.D.M. a total of 15 times out of a possible 25. In addition, there was also a period in which the Department paused Mom's visits due to her talking about the Department's case with J.D.M., which she had been instructed not to do. The trial court ordered visits to resume and admonished Mom. Thereafter, the Department required Mom's visits to be supervised by a therapeutic monitor. This requirement made it difficult for Mom to schedule visits because the monitor's schedule often conflicted with Mom's schedule.

When Mom visited with J.D.M., the foster mom was concerned that Mom did not show particular interest in J.D.M.'s wellbeing. She noted that Mom would repeat to J.D.M. that their

separation was not his fault, as though she were "parroting things that she's been told." Mom would focus on emphasizing that she was the "mommy," rather than inquire about J.D.M.'s medical or academic updates. She would make promises about purchasing things, but when J.D.M. requested a photo of Mom and him, she did not provide one. The foster mom asked permission to screenshot a Zoom visit so that there would be a photo to give him.

J.D.M.'s foster mom recalled that Mom brought J.D.M. toys and candy, though he was not supposed to eat candy or chocolates due to his stomach issues. Mom also brought Ensure for J.D.M. to drink, though he could not have dairy. She brought him raisin bagels, though he did not like raisins. J.D.M.'s foster mom also noted that the bagels were moldy. In addition, Mom brought socks "and stuff" that were too small for J.D.M. Mom testified that her first caseworker advised her to buy Ensure, and that she brought a fresh pack of bagels for J.D.M.

Following Mom's visits, J.D.M.'s foster mom observed that J.D.M. exhibited behavioral issues in the days following. For example, after his first Zoom visit with Mom, J.D.M. threw a mug at his teacher. He also sat at his desk and smashed his face so hard into the desk that he cut his gums. The foster mom explained that these kinds of behaviors subsided and were not an issue at all when J.D.M. had not recently visited with Mom. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)).

## F. Safe, Stable Housing

Mom testified that she has appropriate housing for J.D.M. She stated that the lease is in her name, though she never provided proof. Mom's caseworker could not comment on Mom's housing, except to say that the neighborhood seemed appropriate for a child. The caseworker testified that when she went to Mom's house, Mom would not answer the door, so the caseworker never saw the inside of the home. *See* TEX. FAM. CODE ANN. § 263.307(b)(10), (12); *Holley*, 544 S.W.2d at 372 (Tex. 1976) (factors (G), (H)).

## G.    Providing for the Child's Needs

Mom stated that she was employed at the time of trial and had maintained the same employment for three years, providing make-ready cleanup services as well as office filing assistance. However, Mom never provided proof of employment to her caseworker, so her employment status remained unconfirmed at trial.

In addition, Mom was on probation during her case with the Department, and she had an active probation warrant at the time of trial. As part of the terms of her probation, she was not allowed to travel outside of San Antonio, which meant that she could not attend J.D.M.'s medical appointments in Austin. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (D), (H)).

## H.    Child's Placement

J.D.M. was placed with a specialized foster family due to his medical needs. His foster mom said that when a child stays with her, that child is considered family. She stated that her home is not a permanent placement, but she was willing to care for J.D.M. until the family found a permanent home for him. The foster mom testified that she turned down a caseworker position to continue caring for J.D.M.

The foster mom testified that she took J.D.M. on vacation with her family, and she stated that J.D.M. refers to her as mom. According to the foster mom, she maintains relationships with several foster families who are all caring for children of different ages. The families spend time together and refer to their group as "The Pod." The foster mom stated that J.D.M. understands that the placement is not permanent and has said that he would like to stay in touch and visit in the future.

In the meantime, the foster mom is making a concerted effort to find the right home for J.D.M. For example, the foster mom introduced J.D.M. to a foster-to-adopt family in which the

mom is a nurse who is well-informed about medical needs. At the time of trial, the foster mom had not discussed J.D.M.'s adoption with the foster-to-adopt family, but she was continuing to work toward that outcome. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (2), (12); *Holley*, 544 S.W.2d at 372 (factors (A), (B), (D), (F), (G)).

## I.      Ad Litem's Recommendation

J.D.M.'s ad litem recommended that Mom's rights be terminated. She stated that Mom had not made progress over the course of her involvement with the Department, and that Mom's issues directly resulted in J.D.M.'s neglect while he was with her. According to the ad litem, J.D.M. was anxious about the idea of returning to Mom. In his foster placement, his needs were being met, and he was meeting age-appropriate benchmarks. The ad litem observed that J.D.M. has extensive medical needs and noted that he thrives when his needs are met, which did not occur under Mom's care. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (8), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (A), (B), (C), (D), (H)).

## J.      Sufficient Evidence

Regarding Mom, the trial court stated, "[L]et's be honest, there was no cooperation and no progression." Overall, the trial court was very candid about its frustration with J.D.M.'s case. In part, the trial court criticized the Department for not working harder to achieve reunification for Mom and J.D.M. But the trial court directed its final criticism at Mom, stating, "[W]hen the party causes the confusion, doesn't take advantage of the referrals, and doesn't let people in the home, and doesn't test clean, and doesn't do drug treatment, and doesn't show up to therapy, and may be inappropriate at visits, and maybe shows up late for visits, and doesn't demonstrate that they can meet the needs of the child, and has shown that not only in this court but also in the criminal court for the probation, one could argue the problem ain't necessarily CPS, and that the creator of the

confusion and the problem is the actual parent." *See In re S.J.R.-Z.*, 537 S.W.3d at 691; *In re F.M.*, 536 S.W.3d at 844.

Having reviewed the evidence under the appropriate standards, we conclude the trial court's statements accurately summarized the issues testified to during trial. Accordingly, the trial court could have "reasonably form[ed] a firm belief or conviction" that it was in the child's best interests for Mom's parental rights to be terminated. *See In re H.R.M.*, 209 S.W.3d at 108 (citing *In re C.H.*, 89 S.W.3d at 25). Therefore, the evidence was legally and factually sufficient to support the trial court's best-interest-of-the-child findings. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

We overrule Mom's sole issue.

## CONCLUSION

For the reasons given above, we affirm the trial court's order.

Patricia O. Alvarez, Justice

---

[i] <u>Clear and Convincing Evidence</u>. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code and terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *In re D.M.*, 452 S.W.3d at 472.

[ii] <u>Statutory Grounds for Termination</u>. The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX. FAM. CODE ANN. § 161.001(b). Here, the trial court found Mom's course of conduct met subsections (N), (O), and (P):

(N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
(i) the department has made reasonable efforts to return the child to the parent;
(ii) the parent has not regularly visited or maintained significant contact with the child; and
(iii) the parent has demonstrated an inability to provide the child with a safe environment; [and]
(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for

not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child;

(P) used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and:

    (i) failed to complete a court-ordered substance abuse treatment program; or

    (ii) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance.

*Id.* § 161.001(b)(1).

[iii] Legal Sufficiency. When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d at 266). If the court "'determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.*

[iv] Factual Sufficiency. Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re H.R.M.*, 209 S.W.3d at 108.

[v] Statutory Factors for Best Interest of the Child. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:

(1) the child's age and physical and mental vulnerabilities;

(2) the frequency and nature of out-of-home placements;

(3) the magnitude, frequency, and circumstances of the harm to the child;

(4) whether the child has been the victim of repeated harm after the initial report and intervention by the department;

(5) whether the child is fearful of living in or returning to the child's home;

(6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

(7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9) whether the perpetrator of the harm to the child is identified;

(10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

    (A) minimally adequate health and nutritional care;

    (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

    (C) guidance and supervision consistent with the child's safety;

    (D) a safe physical home environment;

    (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and

    (F) an understanding of the child's needs and capabilities; and

(13) whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[vi] *Holley* Factors. The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

(A) the desires of the child;
(B) the emotional and physical needs of the child now and in the future;
(C) the emotional and physical danger to the child now and in the future;
(D) the parental abilities of the individuals seeking custody;
(E) the programs available to assist these individuals to promote the best interest of the child;
(F) the plans for the child by these individuals or by the agency seeking custody;
(G) the stability of the home or proposed placement;
(H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and
(I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).